# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLORES J. MURPHY, as Trustee of the CHARLES M. MURPHY ADMINISTRATIVE TRUST,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 1:24-cv-00260-KES-BAM<br><br>ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS<br><br>Doc. 17 |

Plaintiff Dolores J. Murphy ("Ms. Murphy"), as Trustee of the Charles M. Murphy Administrative Trust (the "Administrative Trust"), brings this claim against the United States of America seeking a refund of tax penalties and related interest that the Internal Revenue Service ("IRS") imposed for the late filing of the 2016 and 2017 tax returns for the trust. Doc. 1 ("Compl."). Ms. Murphy also seeks a refund of penalties assessed in the 2021 tax year related to the payment of the 2016 and 2017 penalties and declaratory relief that the IRS's denials of her claims are invalid, null, and void. *Id.* The government moves to dismiss the refund claim related to the 2016 tax year under Federal Rule of Civil Procedure 12(b)(1), claiming that the 2016 refund claim is untimely and thus jurisdictionally barred. Doc. 17-1 ("MTD").

The government moves to dismiss both the 2016 and 2017 claims under Rule 12(b)(6), asserting that Ms. Murphy has not set forth any facts that would constitute reasonable cause for

the late filing of the Administrative Trust's 2016 and 2017 returns and the late payment of its 2016 and 2017 taxes. *Id.* Finally, the government seeks dismissal of the requests for declaratory relief as statutorily barred and dismissal of the claims related to the 2021 tax year as moot or jurisdictionally barred. *Id.* Ms. Murphy opposed the motion, Doc. 19, and the government replied, Doc. 22 ("Reply"). The Court held oral argument on this matter on November 4, 2024. Doc. 27. Ms. Murphy filed supplemental briefing the same day, Doc. 28, to which the government responded on November 25, 2024, Doc. 29. For the reasons set forth below, the Court denies in part and grants in part the government's motion to dismiss.

I. **Background**[1]

Ms. Murphy is the surviving spouse of Charles M. Murphy ("Mr. Murphy"), who passed away on November 28, 2016. Compl. ¶¶ 40, 44. Ms. Murphy is the trustee of the Administrative Trust. Compl. ¶ 2.

On January 7, 1993, Ms. Murphy and Mr. Murphy created a revocable grantor trust (the "Murphy Family Trust"). Compl. ¶ 41. One of the Murphy Family Trust's assets was 89,955 shares of stock of Murphy Bank, and Ms. Murphy and Mr. Murphy were treated as the owners of the stock for income tax purposes. Compl. ¶ 42. Ms. Murphy and Mr. Murphy employed a certified public accountant, Mr. Chaltraw, to provide tax advice and prepare federal and state income tax returns for Murphy Bank, Ms. Murphy, and Mr. Murphy. Compl. ¶ 43. Following Mr. Murphy's death, Mr. Chaltraw "continued to be the certified public accountant for Murphy Bank, [Ms. Murphy], and the Administrative Trust" and "as such, provided tax advice to and prepared Federal and California income tax returns for them." Compl. ¶ 45.

As he had for years past, Mr. Chaltraw prepared a federal and state income tax return for

---

[1] This recitation of facts is mostly taken from Ms. Murphy's complaint. *See* Compl. For purposes of a Rule 12(b)(6) motion to dismiss, the allegations in the complaint are assumed to be true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, to the extent the government's 12(b)(1) motion mounts a factual attack on jurisdiction, "the district court may review evidence beyond the complaint" to resolve the factual dispute and resolve the jurisdictional question. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Thus, some disputed facts from the government's moving papers are also contained within this recitation to the extent they relate to the Rule 12(b)(1) motion.

Murphy Bank, Ms. Murphy, and Mr. Murphy for the 2016 tax year and for Murphy Bank and Ms. Murphy for the 2017 tax year. Compl. ¶¶ 46, 48, 54, 56. The chief financial officer of Murphy Bank and Ms. Murphy provided Mr. Chaltraw with all the information and documents requested by him to prepare the returns. Compl. ¶¶ 47, 49, 55, 57. Ms. Murphy and the chief financial officer of Murphy Bank met with Mr. Chaltraw so that he could review the tax returns with them, advise them of any balance due, and obtain Ms. Murphy's authorization to electronically file the returns. Compl. ¶¶ 50, 58. She "did not read or thoroughly review" the forms; rather, she "relied on [their] long-term certified public accountant[] to prepare complete and accurate Federal and California income tax returns for [them]." Compl. ¶¶ 50, 58.

In February 2019, Ms. Murphy's tax counsel discovered that, following Mr. Murphy's death, no tax returns had been filed for the Administrative Trust for the 2016 or 2017 tax years. Compl ¶¶ 51-53. Rather, some of the "S corporation items of Murphy Bank . . . allocable to the Murphy Bank Stock held by the Murphy Family Trust" and other income, gains, losses, deductions, and credits of the Administrative Trust were incorrectly attributed to the individual tax returns of Mr. and/or Ms. Murphy, and the gross income allocable to Ms. Murphy in the form of distributions from the Administrative Trust following Mr. Murphy's death were not included on her tax returns. Compl ¶¶ 51-53. Ms. Murphy alleges that these errors occurred "[d]ue to [Mr. Chaltraw's] erroneous tax advice to [Ms. Murphy] individually, as the executor of Mr. Murphy's estate, and as Trustee of the Administrative Trust." Compl. ¶ 61. Thereafter, Mr. Chaltraw remedied the errors with the tax returns filed by Murphy Bank, Ms. Murphy, and Mr. Murphy for the relevant years and prepared the tax returns for the Administrative Trust. Compl. ¶ 62.; Doc. 19-1 at 37.[2]

On July 15, 2020, Ms. Murphy, as trustee of the Administrative Trust, filed late the Administrative Trust's U.S. Income Tax Return for Estates and Trusts (Form 1041) and the Administrative Trust's U.S. Information Return Trust Accumulation of Charitable amounts (Form 1041-A) for the 2016 tax year. Compl. ¶ 5. Along with the 1041 form, she submitted a check for

---

[2] Mr. Chaltraw's reasonable cause statement is incorporated by reference into Ms. Murphy's complaint. Compl. ¶ 67.

3

the tax and accrued interest due for the 2016 tax year and a letter requesting that the IRS forego assessing any penalties against Ms. Murphy for late filing of the return and late payment of the taxes due, claiming that the lateness was due to reasonable cause and not willful neglect. Compl. ¶¶ 5-6. In support of the letter requesting a finding of reasonable cause, Ms. Murphy filed declarations by her and her accountant. Compl. ¶ 6. Similarly, on July 31, 2020, Ms. Murphy filed late tax return Forms 1041 and 1041A on behalf of the Administrative Trust for the 2017 tax year. As with the 2016 claim, with the filing she included a letter requesting that no late penalties be assessed and included the declarations by her and her accountant as support. Compl. ¶¶ 8-10.

Around September 20, 2021, the IRS processed the 2016 Form 1041-A and assessed late filing penalties of $8,270.00 under 26 U.S.C. § 6652. Compl. ¶¶ 13-14. Around November 15, 2021, the 2016 Form 1041 was processed and the IRS assessed a late filing penalty of $9,523.35 under 26 U.S.C. § 6651(a)(1) and a late payment penalty of $8,465.20 under 26 U.S.C. § 6651(a)(2), as well as interest in the amount of $9,325.26.[3] Compl. ¶¶ 11-12. Around September 20, 2021, the IRS processed the 2017 Form 1041-A and assessed late filing penalties and interest of $8,480.00 under 26 U.S.C. § 6652. Compl. ¶¶ 19-20. Around October 11, 2021, the IRS processed the 2017 Form 1041 and assessed late filing penalties of $60,712.42 under 26 U.S.C. §6651(a)(1) and late payment penalties of $37,776.62 under 26 U.S.C. §6651(a)(2), as well as interest in the amount of $44,429.55. Compl. ¶¶ 16-17. Ms. Murphy alleges that the penalties and interest assessed for the 2016 Form 1041-A, the 2017 Form 1041-A, and the 2017

---

[3] 26 U.S.C. § 6651(a)(1) provides that "[i]n case of failure . . . to file any return required [under certain authorities] on the date prescribed therefore . . . unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate." Similarly, 26 U.S.C. § 6651(a)(2) provides that "[i]n case of failure . . . to pay the amount shown as tax on any return specified in [26 U.S.C. § 6651(a)(1)] on or before the date prescribed for payment of such tax . . . unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount shown as tax on such return 0.5 percent of the amount of such tax if the failure is not for more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate."

1  Form 1041 were paid in full to the IRS on or after October 11, 2021, from the Administrative
2  Trust's overpayment of taxes for the 2020 tax year.[4]  Compl. ¶¶ 15, 18, 21.  In contrast, the
3  government asserts that the penalties and interest were paid effective April 15, 2021.  MTD 7 &
4  Doc. 17-2 at 4.

5  On January 7, 2022, Ms. Murphy's tax counsel submitted a request via email to the IRS
6  for the abatement of all penalties and interest.  Compl. ¶ 22.  Ms. Murphy's counsel also sent a
7  letter dated January 7, 2022, confirming the request.  Compl. ¶ 23 & Ex A.  On February 3, 2022,
8  the IRS abated the penalties and interest associated with the 2016 Form 1041 pursuant to the
9  IRS's first-time penalty abatement program.  Compl. ¶ 25.  On February 22, 2022, Murphy's tax
10 counsel had a telephone conversation with an IRS technical specialist to discuss the status of the
11 requests for abatement of the penalties and interest associated with the 2016 Form 1041-A, 2017
12 Form 1041-A, and 2017 Form 1041, during which the technical specialist stated that the other
13 three requests had been "missed" or "overlooked" and the technical specialist would review the
14 requests.  Compl. ¶ 26.

15 On March 3, 2022, the IRS denied Ms. Murphy's request to abate the penalties and
16 interest associated with the 2017 Form 1041.  Compl. ¶ 27 & Ex. B.  The IRS denial did not
17 address the requests for abatement of the penalties and interest associated with the 2016 Form
18 1041-A or the 2017 Form 1041-A.  Compl. ¶ 28.  On May 2, 2022, Ms. Murphy filed a "Protest
19 and Administrative Appeal of Service Center's Denial of Request to Abate Civil Penalties," and
20 requested that the IRS reconsider its denial regarding the 2017 Form 1041 and that the IRS also
21 abate and refund the penalties and interest associated with the 2016 Form 1041-A and the 2017
22 Form 1041-A.  Compl. ¶¶ 29-30.  The IRS did not respond to this submission.  Compl. ¶ 31.

23 Ms. Murphy alleges that on October 10, 2023, she filed formal (Form 843) administrative
24 claims with the IRS requesting abatement and refund of the penalties and interest associated with
25 the 2017 Form 1041, 2017 Form 1041-A, and 2016 Form 1041-A.  Compl. ¶¶ 32-34.  The

---

[4] The complaint indicates that the penalties and interest assessed from the 2017 Form 1041 were also paid in part by a credit transfer from a payment made by Ms. Murphy to the IRS with the 2017 Form 1041 form filed on July 31, 2020.  Compl. ¶ 18.

5

government asserts that the relevant filing date for these claims is October 18, 2023. MTD 3. On February 9, 2024, the IRS denied Ms. Murphy's claim regarding the 2016 Form 1041-A on the ground that Ms. Murphy filed her claim more than the greater of three years after filing the tax return or two years after paying the tax or balance due. Compl. ¶¶ 35, 79 & Ex. C. The IRS also noted that it had previously granted her claim regarding the 2017 Form 1041-A. Compl. ¶ 36 & Ex. D.

Ms. Murphy alleges that the IRS paid some of the penalties and interest associated with the 2017 Form 1041 and the 2016 Form 1041-A by a credit transfer from the Administrative Trust's overpayment of federal income tax for the 2020 tax year. Compl. ¶¶ 75, 88. As she intended that overpayment to be applied to the Administrative Trust's taxes for the 2021 taxable year, the IRS's credit transfer of the funds to the earlier year caused the Administrative Trust to be assessed tax penalties for the 2021 tax year. Compl. ¶¶ 75, 88.

In her prayer for relief, Ms. Murphy requests that the IRS notice issued March 3, 2022 denying her claim as to the 2017 Form 1041, and the IRS notice issued February 9, 2024 denying her claim as to the 2016 Form 1041-A "be ordered and adjudged invalid, null, and void." Compl. at 24 ("Prayer for Relief") ¶ 1. She requests refund of the penalties and interest assessed for the 2017 Form 1041 and 2016 Form 1041-A, and any interest allowed by law. Prayer for Relief ¶¶ 2-3. She further requests a refund of the 2021 tax penalties assessed. Prayer for Relief ¶ 4. Finally, she requests attorneys' fees and costs. Prayer for Relief ¶ 5.

**II.    Discussion**

The government moves to dismiss Ms. Murphy's claims for refund for penalties related to the 2016 and 2017 tax years pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). It also challenges Ms. Murphy's first prayer for relief, to the extent it seeks a declaratory judgment, and Ms. Murphy's refund claim for the 2021 tax year.

**A. Jurisdiction to Hear 2016 Form 1041-A Claim**

The government moves to dismiss Ms. Murphy's claim regarding the penalties and interest associated with the 2016 Form 1041-A under Rule 12(b)(1) as jurisdictionally barred. Specifically, the government asserts that Ms. Murphy did not timely file an administrative claim

for refund with the IRS, and thus, this Court lacks jurisdiction to hear her claim.

### 1. Legal Standard

A Rule 12(b)(1) attack on subject matter jurisdiction may be facial or factual. *Safe Air for Everyone*, 373 F.3d at 1039. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* When resolving a factual attack on jurisdiction, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* "The court need not presume the truthfulness of plaintiff's allegations." *Id.* "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* However, a "jurisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Id.* (cleaned up).

### 2. Analysis

It appears that the government is mounting both a facial and a factual jurisdictional attack regarding the timeliness of Ms. Murphy's 2016 claim. *See* MTD 5-7. For this Court to have jurisdiction to hear this claim, Ms. Murphy must have timely filed an administrative claim for refund with the IRS. *See* 26 U.S.C. §§ 7422; *see also Omohundro v. United States*, 300 F.3d 1065, 1067 (9th Cir. 2002) ("A taxpayer's failure to file an administrative claim within the time periods imposed by statute divests the district court of jurisdiction over an action for a refund or credit"). The parties agree that to be considered timely, Ms. Murphy's administrative claim must have been filed within the later of three years from the time the tax return was filed or two years from the date of the payment she seeks to have refunded. 26 U.S.C. §§ 6511(a), 6511(b)(1).

The government argues that Ms. Murphy failed to file her administrative claim within three years of the filing of the Administrative Trust 2016 Form 1041, as that tax return was filed

in July 2020 and she filed her administrative claim on October 18, 2023.[5]  MTD 7.  The government also argues that Ms. Murphy failed to file the administrative claim within two years of the payment she seeks to be refunded, as the payment for the penalties and interest was made on April 15, 2021, and her October 18, 2023 claim was more than two years later.  *Id.*  Thus, the government argues that the Court does not have jurisdiction to hear this claim.  *Id.*  In support of its contention that the payment for the penalties and interest was made on April 15, 2021, the government provides an Account Transcript that states that states that a credit was transferred in to pay the penalties owed on April 15, 2021.  *See* Doc. 17-2 at 5.  However, the government maintains that Ms. Murphy's claim would not have been timely, even accepting the date Ms. Murphy asserts that the penalties were paid, October 11, 2021, given that October 11, 2021, is more than two years before October 18, 2023, when the government asserts the administrative claim was filed.  Reply 8.

There are factual disputes regarding whether Ms. Murphy filed her formal administrative claims on October 10, 2023, or October 18, 2023, and whether the penalties and fees were paid by Ms. Murphy on October 11, 2021, or April 15, 2021.[6]  But the Court need not decide either of these factual questions given that Ms. Murphy made informal claims for refund on January 7, 2022, and on May 22, 2022, which are both within three years of the date of the filing of the

---

[5] The United States asserts that the 2016 Form 1041-A was filed on July 31, 2020, but this appears to be an error.  Ms. Murphy alleges that it was filed on July 15, 2020, and the Account Transcript that the United States attached to its motion corroborates the earlier date.  *See* Doc. 17-2 (account transcript indicating that the 2016 Form 1041-A return was received by the IRS prior to July 31, 2020, on July 20, 2020).

[6] The government does not offer any evidence to support its assertion that Ms. Murphy filed the administrative claims on October 18, 2023, instead of October 10, 2023, as Ms. Murphy alleges.  *See* MTD 7 (citing Compl. ¶¶ 32, 33).  The United States clarifies in its reply brief that it believes the filing was *received* by the IRS on October 18, 2023, and the date of receipt by the IRS, rather than the date it was sent by Ms. Murphy, should be used as its filing date.  Reply 8.  First, the government provides no evidence that the filing was received by the IRS on October 18, 2023.  Second, it is unclear that, even if the filing was received that date, the date of receipt should be considered as the filing date.  *See* 26 C.F.R. 301.7502-1 (providing that "a document or payment is deemed to be filed or paid on the date of the postmark stamped on the envelope").  However, as noted below, the Court need not address this factual dispute regarding the date of the filing of these forms to resolve the jurisdictional issue.

return on July 15, 2021.⁷ *Id.* The government argues that the Court should not find that the statute of limitations is met by Ms. Murphy's informal claims for refund on January 7, 2022, and May 2, 2022. Reply 8. First, the government argues that the complaint does not specifically allege that Ms. Murphy made an informal refund claim and thus she has failed to facially establish this Court's jurisdiction. *Id.* at 8-9. Second, the government claims that the January 7, 2022 letter is not legally sufficient to constitute an informal claim because the letter does not specifically state that a refund is sought. *Id.* at 9.

Section § 7422 of title 26 of the United States Code provides that "[n]o suit or proceeding shall be maintained in any court for the recovery . . . of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected*, until a claim for refund or credit has been duly filed with the Secretary*, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." (emphasis added). Reading the complaint in the light most favorable to Ms. Murphy, she has sufficiently alleged that she timely filed a claim with the IRS through her January 7, 2022 informal claim for refund.

The "informal claim doctrine" is a "judicially-created exception to the tax code's timeliness requirements." *Libitzky v. United States*, 110 F.4th 1166, 1173 (9th Cir. 2024). A taxpayer may stop the statute of limitations from tolling through the filing of a claim for refund, even if that claim is technically deficient in some ways, so long as it meets certain requirements and is later corrected by the filing of a formal refund claim. *Id.*; *see also Kales v. United States*, 314 U.S. 186, 194-95 (1941). "Courts have held that an 'informal claim' is sufficient to meet the requirements of 26 U.S.C. § 6511 and 7422(a) and generally have allowed the taxpayer to file suit for a tax refund if the claim: (1) gives notice to the Commissioner of the IRS that the taxpayer is asserting a right to a credit or refund; (2) states the legal and factual basis for the claim or at least indicate[s] the grounds for the claim; and (3) [is] in writing or ha[s] a written component."

---

⁷ Plaintiff's complaint includes the January 7, 2022 correspondence as an exhibit. *See* Compl. Ex. A.

1  *Johnson v. United States*, 562 F. Supp. 3d 1026, 1031 (E. D. Cal. 2021), amended on

2  reconsideration, No. 219-cv-01561-TLN-JDP, 2022 WL 1524602 (E.D. Cal. May 13, 2022).

3        The complaint alleges the "January 7, 2022, Claim for Refund and Request for Abatement

4  . . . was filed with the IRS within two (2) years of the date of payment of the 2016 Form 1041-A

5  Penalties and Interest to the [IRS]." Compl. ¶ 81. If the January 7, 2022 letter constitutes an

6  informal claim, then it was timely made within two years regardless of whether the date of

7  payment is considered to be April 15, 2021, or October 10, 2021. While the government's asserts

8  that Ms. Murphy did not allege in her complaint that the January 7, 2022 notice constituted an

9  informal claim, the face of the complaint indicates otherwise. The complaint alleges the "January

10  7, 2022, Claim for Refund and Request for Abatement . . . was filed with the IRS within two (2)

11  years of the date of payment of the 2016 Form 1041-A Penalties and Interest to the [IRS]."

12  Compl. ¶ 81. Thus, Ms. Murphy has facially alleged jurisdiction as to this claim.

13        The government's argument that the letter did not sufficiently give notice that Ms.

14  Murphy sought a refund is also not supported. Review of the January 7, 2022 letter indicates that

15  it constituted an informal claim for a refund. The subject line of the January 7, 2022 letter states

16  "Abatement of Late Filing Penalties under Section 6652 – Form 1041-A." Compl., Ex. A. The

17  letter states that it relates to the late filing penalties that have been assessed, and it attaches

18  reasonable cause statements setting forth why the IRS should find that reasonable cause exists to

19  abate the penalties. *Id.* Moreover, Ms. Murphy alleges that this letter was treated as a request for

20  a refund by the IRS. Specifically, Ms. Murphy alleges that shortly after the January 7, 2022 letter

21  was forwarded to an IRS technical specialist, the IRS abated the 2016 Form 1041 penalties and

22  interest, which was one of the requests in the letter. Compl. ¶ 25. Additionally, on February 22,

23  2022, her tax counsel had a telephone conversation with an IRS technical specialist to discuss the

24  status of the additional requests in the January 7, 2022 letter for abatement of the penalties and

25  interest associated with the remaining three claims, including the 2016 Form 1041-A claim.

26  Compl. ¶ 26. The IRS employee responded that the other three requests in her letter had been

27  "missed" or "overlooked" and would be reviewed. Compl. ¶ 26. The IRS subsequently notified

28  Ms. Murphy, on March 3, 2022, that it was denying her request to abate the penalties and interest

associated with the 2017 Form 1041. Compl. ¶ 27 & Ex. B.

The government does not dispute that the other elements required for this letter to constitute an informal claim are met. Because the January 7, 2022 letter provided notice to the IRS that Ms. Murphy was asserting a right to a credit or refund on her 2016 Form 1041-A claim, provided legal grounds for the claim, and was in writing, the January 7, 2022 constituted a "duly filed" informal claim. The statute of limitations tolled at that time and therefore, Ms. Murphy's request for refund was brought within the time limit required by statute for a taxpayer to bring an administrative claim.

This Court therefore has jurisdiction to hear Ms. Murphy's claim regarding the penalties and interest related to the 2016 Form 1041-A filing.[8]

### B. Reasonable Cause for Late Filing of the Administrative Trust's Returns

The government further argues that Ms. Murphy's 2016 and 2017 claims should be dismissed for failure to state a claim upon which relief may be granted under Rule 12(b)(6). Specifically, the government asserts that Ms. Murphy has not alleged facts that could support a finding that Ms. Murphy had reasonable cause for late filing of the Administrative Trust's tax returns.

#### 1. Legal Standard

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

---

[8] Ms. Murphy's May 2, 2022 letter also would arguably constitute an informal refund claim. Though the government appears to acknowledge that the May 2, 2022 letter could be a timely informal refund claim, given that it states that Ms. Murphy was seeking a refund, the government argues that the Court should not consider that letter because it was not included in the complaint. Reply 9. This Order need not further address the May 2, 2022 letter, as it finds that the January 7, 2022 letter constituted an informal claim.

11

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain facts that "nudge [the plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In determining whether a complaint states a claim on which relief may be granted, the Court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon*, 467 U.S. at 73 (1984). However, the Court need not assume the truth of legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 680. While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also id.* at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**2. Analysis**

The government asserts that, even taking all allegations in the complaint as true, Ms. Murphy has not alleged any facts that could constitute reasonable cause for late filing and payment. MTD 9. Specifically, the government argues that Ms. Murphy's assertion that she did not know her husband's death would trigger the new requirement that the Administrative Trust file a return, and that she relied on her accountant to inform her of that requirement, falls short as a matter of law of demonstrating reasonable cause. MTD 9-10.

A taxpayer who fails to file a return required to be filed or fails to pay the amount of tax shown as due on a return shall pay a penalty. 26 U.S.C. §§ 6651(a)(1)-(2). However, a taxpayer will not be liable for penalties due to late filing or late payment if the taxpayer can show that such failure to file or pay timely was due to reasonable cause and not due to willful neglect. 26 U.S.C. §§ 6651(a)(1)-(2). "To escape the penalty, the taxpayer bears the heavy burden of proving both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was 'due to

reasonable cause.'" *United States v. Boyle*, 469 U.S. 241, 245 (1985). Willful neglect "may be read as meaning a conscious, intentional failure or reckless indifference." *Id.* "If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause." 26 C.F.R. § 301.6651–1(c)(1); *see also Boyle*, 469 U.S. at 243. The government does not assert that Ms. Murphy was willfully neglectful; the issue is whether Ms. Murphy has sufficiently alleged reasonable cause.

"The failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent [to timely complete and file the return], and such reliance is not 'reasonable cause' for a late filing," given that "[i]t requires no special training or effort to ascertain a deadline and make sure that it is met." *Boyle*, 469 U.S. at 252. However, "[w]hen an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice." *Id.* "To require the taxpayer to challenge the attorney [or accountant], to seek a 'second opinion,' or to try to monitor counsel on the provisions of the [Internal Revenue] Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place." *Id.* (citing *Haywood Lumber & Min. Co. v. C.I.R.*, 178 F.2d 769, 771 (2d Cir. 1950)). Thus, "reliance on the opinion of a tax adviser may constitute reasonable cause for failure to file a return." *Id.* at 250 (acknowledging approvingly that courts "have frequently held that 'reasonable cause' is established when a taxpayer shows that he reasonably relied on the advice of an accountant or attorney that it was unnecessary to file a return, even when such advice turned out to have been mistaken"). "The Tax Court requires a taxpayer to prove three elements in order to show that reliance on advice was reasonable: '(1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment.'" *Cooper v. Comm'r*, 877 F.3d 1086, 1095 (9th Cir. 2017) (citing *Neonatology Assocs., P.A. v. Comm'r*, 115 T.C. 43, 99 (2000)).

In arguing that, as a matter of law, Ms. Murphy has not established reasonable cause, the government relies on cases involving plaintiffs who knew of their obligations to file a tax return but relied on an agent to meet the filing deadline. *See Boyle*, 469 U.S. 241; *Conklin Bros. of*

13

*Santa Rosa, Inc. v. United States*, 986 F.2d 315 (9th Cir. 1993); *Specht v. United States*, 661 Fed. App'x 357 (6th Cir. 2016); *Lindsay v. United States*, 4 F.4th 292 (5th Cir. 2021). This case is fundamentally distinguishable. Ms. Murphy did not know that she had a new obligation, as trustee of the Administrative Trust, to file a tax return on behalf of the Administrative Trust upon the conversion of the trust from revocable to irrevocable following her husband's death.

The facts of this case more closely resemble the facts of *Haywood Lumber*, which the Supreme Court cited in *Boyle* to support the proposition that ordinary business care and prudence does not require a taxpayer to challenge his hired tax expert, seek a second opinion, or try to monitor the expert on the provisions of the tax code. *Boyle*, 469 U.S. at 250-51 (citing *Haywood Lumber*, 178 F.2d 769). In *Haywood Lumber*, the taxpayer, a corporation, was assessed penalties for failure to file a personal holding company return. *Haywood Lumber*, 178 F.2d at 770. The taxpayer's secretary-treasurer requested that a certified public accountant prepare the proper corporate tax returns and fully disclosed all necessary information about the corporation, including that the taxpayer was a personal holding company. *Id.* The district court held that the taxpayer "had not sustained the burden of proving that ordinary business care and prudence were exercised" in failing to file the personal holding company returns "[b]ecause [the secretary-treasurer] did not 'specifically inquire' of [the certified public accountant] 'concerning the personal holding company status of [the taxpayer]' but 'merely awaited passively for such tax advice as [the certified public accountant] might volunteer to give.'" *Id.* at 771. The Court of Appeals for the Second Circuit reversed, holding that the secretary-treasurer did not wait passively for advice that the certified public accountant might volunteer; rather, he "affirmatively requested the preparation by his consultant of proper returns." *Id.* The Court of Appeals further noted: "We doubt if anyone would suggest that a client who stated the facts of his case to his lawyer must, in order to show ordinary business care and prudence, inquire specifically about the applicability of various legal principles which may be relevant to the facts stated." *Id.* at 771.

Similarly, in *Henry v. Commissioner*, 170 F.3d 1217, 1223 (9th Cir. 1999), the Court of Appeals for the Ninth Circuit overturned a tax court decision that had found the taxpayer liable for penalties. In *Henry*, the plaintiffs sold stock options they had received from the company for

14

which they worked, and, relying on their certified public accountant's decision and judgment, they erroneously reported the proceeds as long-term capital gain instead of ordinary income. *Id.* at 1218-19. The tax court found they had not established reasonable cause to avoid the penalties because "petitioners had an obligation to independently verify their own proper income tax liability" and "petitioners failed to ask pertinent questions or even make a cursory investigation beyond the information provided to them concerning [how the stock options should be reported]." *Id.* at 1220. The Ninth Circuit reversed, holding that petitioners were reasonable in "consult[ing] their long-time accountant" and "relying on his preparation of their tax returns." *Id.*

The case at bar resembles *Haywood Lumber* and *Henry*. Reading the complaint most favorably to Ms. Murphy, she alleges that Mr. Chaltraw was the certified public accountant for Murphy Bank, for the Administrative Trust, and for her individually and in her capacities as trustee of the Administrative Trust and as executor of her husband's estate, and that he provided tax advice and prepared federal and state income tax returns for all of them. She alleges that Mr. Chaltraw had been their accountant for fifteen years without any prior issues.[9] She further alleges that she provided Mr. Chaltraw with the relevant information that sparked the change in tax circumstances—that is, that her husband had died and the date of his death. She also alleges that she provided to Mr. Chaltraw all the information that he requested to prepare proper tax returns.

This case is not one in which the taxpayer's responsibility to file a return, and the deadline to do so, was readily discernable such that her agent's failure to timely file the return should be attributed to her. Rather, Ms. Murphy's husband's death triggered complicated legal consequences difficult to discern even for tax professionals. Her husband's death converted a trust that was revocable into one that was irrevocable and triggered a new filing requirement of which she was unaware. To exercise ordinary business prudence, Ms. Murphy was not required to research the intricacies of revocable and irrevocable trusts and their effect on tax law. She was entitled to provide her long-time accountant with the relevant information and rely on him to

---

[9] In her reasonable cause statement, Ms. Murphy notes that her husband was well-educated in accounting matters and had selected Mr. Chaltraw to be their accountant. *See* Opp'n Ex. E. at 44. Ms. Murphy's reasonable cause statement is incorporated by reference into the complaint. Compl. ¶ 67.

1  prepare proper income tax returns.  She reasonably relied on her accountant, who determined
2  (erroneously as it turned out) that certain income was reportable on the Murphys' personal
3  returns, instead of on a return for the Administrative Trust.  The income was thus reported to the
4  IRS, but on the wrong returns, in reliance on the accountant's advice.

5    The government argues that this case cannot constitute reasonable cause because Ms.
6  Murphy does not allege that she received advice, but rather that she received a lack of advice.
7  Reply 3-5; *see also* Doc. 29 at 4-5.  In support, it cites several cases providing that the advice
8  relied upon must be affirmative and cannot simply be that the accountant prepared an incorrect
9  tax return for the taxpayer.  *Schweizer v. Comm'r*, T.C. Memo 2022-102, 2022 WL 5239291, at
10 *5 (Oct. 6, 2022) ("We have defined advice as 'any communication, including the opinion of a
11 professional tax adviser, setting forth [an] analysis or conclusion . . . provided to (or for the
12 benefit of) the taxpayer.'"); *Neonatology Associates*, 115 T.C. at 100 ("The mere fact that a
13 certified public accountant has prepared a tax return does not mean that he or she has opined on
14 any or all of the items reported therein."); *Giambrone v. Comm'r*, T.C. Memo 2024-47, 2024 WL
15 1675086, at *12 n.1 (April 18, 2024) ("Simply preparing a tax return based on data provided by
16 the taxpayer does not count as advice.").

17   The cases that the government cites are distinguishable from Ms. Murphy's
18 circumstances.  This is not a case where the taxpayer provided information about a specific asset
19 to be reported, the accountant simply copied that item onto a tax return, and the taxpayer then
20 claims that such copying of the item onto the return constituted judgment and advice by the tax
21 preparer.  Reading the complaint in the light most favorable to the Ms. Murphy, she plausibly
22 alleges that she informed her accountant of her husband's death and that she affirmatively
23 requested that he prepare proper tax returns given those circumstances.  He exercised his
24 judgment in continuing to report the shares and other income on the Murphys' individual returns,
25 rather than on a return for the Administrative Trust.  Ms. Murphy sufficiently alleges that she
26 reasonably relied on her accountant's judgment as to which returns needed to be filed and how
27 income needed to be allocated on the returns.

28   Finally, the government argues that Ms. Murphy's reasonable cause defense must fail

16

1  regardless of whether she received advice from her accountant, because a taxpayer has a duty to
2  review her return and Ms. Murphy did not actually read or review the tax returns.  Doc. 29 at 5-6
3  (citing *Corning Place Ohio, LLC v. Comm'r*, T.C. Memo. 2024-72, at *30 (2024); *Prudhomme v.
4  Comm'r*, 345 F. App'x 6, 11–12 (5th Cir. 2009)).  However, in the cases the government cites the
5  error or omission on the tax return would have been obvious and discoverable by the taxpayer if
6  the taxpayer had reviewed the return.  As already discussed, that is not the case here.  Reviewing
7  the returns would not have provided any basis for Ms. Murphy to doubt her accountant's
8  assessment of the intricacies of the tax laws at issue or provided any indication that the changed
9  circumstances required the allocation of the income on tax returns to be filed on behalf of the
10 Administrative Trust.

### C. Prayer for Declaratory Relief

The government also argues that Murphy's first request for relief, which requests that "[t]he 2017 Form 1041 03/03/2022 Notice of Claim Disallowance and the 2016 Form 1041-A Form 843 Notice of Claim Disallowance each be ordered and adjudged as invalid, null, and void," is jurisdictionally barred by the Declaratory Judgment Act and the Anti-Injunction Act. MTD 7-8.  Specifically, the Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction, *except with respect to Federal taxes* . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Id.* (emphasis added). The reach of the Declaratory Judgment Act is coextensive with that of the Anti-Injunction Act, which prohibits suits to restrain the assessment or collection of any tax.  *Id.*

Ms. Murphy denies that she is requesting declaratory relief.  She confirms that she seeks only a finding that her claims for abatement and refund should be granted and that the IRS incorrectly denied the claims.  Given Ms. Murphy's acknowledgement that she is not seeking declaratory relief, the government's motion to dismiss is granted as to any request in the

complaint for declaratory relief.

### D. Request for Refund of 2021 Penalties

Ms. Murphy also requests that she "be refunded the sum of the Administrative Trust's 2021 Estimated Tax Penalty and the Administrative Trust's Additional 2021 Estimated Tax Penalty, or any other amount as allowed by law, together with interest thereon as allowed by law." Compl. 24.  Specifically, she alleges that because the IRS paid some of the penalties and interest associated with the 2017 Form 1041 by a credit transfer from the Administrative Trust's overpayment of federal income tax for the 2020 tax year, which was supposed to be applied as an estimated tax payment for the Administrative Trust's taxes for the 2021 tax year.  Compl. ¶ 75. She alleges this resulted in the Administrative Trust being assessed an estimated tax penalty of $907.14 for the 2021 tax year.  *Id.*  Ms. Murphy similarly alleges that, due to the IRS's payment by credit transfer of some of the interest and penalties associated with the 2016 Form 1041-A, the Administrative Trust was assessed an estimated tax penalty for the 2021 tax year of $68.85. Compl. ¶ 88.

The government asserts that "dismissing the refund claims for 2016 and 2017 would eliminate [Ms. Murphy's] refund claim for the 2021 estimated tax penalty." MTD 5 n.1.  The parties did not otherwise provide any briefing on this request for relief, but they agreed at the hearing that Ms. Murphy would need to first pursue a separate administrative claim with the IRS for refund of the 2021 penalties before she could bring a claim in federal court as to such penalties.  Accordingly, the motion to dismiss is granted as to Ms. Murphy's claim regarding the 2021 penalties, without prejudice to Ms. Murphy refiling the claim after exhausting administrative remedies.

///
///
///
///
///

### III. Conclusion and Order

Based upon the foregoing, the government's motion to dismiss, Doc. 17, is denied in part and granted in part. Specifically, the motion to dismiss is GRANTED as to the complaint's prayer for declaratory relief and is GRANTED without prejudice as to plaintiff's claim for refund of the penalties assessed for the 2021 tax year. Otherwise, the motion to dismiss is DENIED.

IT IS SO ORDERED.

   Dated:   February 16, 2025

                                         UNITED STATES DISTRICT JUDGE